970 F.2d 1360
 59 Fair Empl.Prac.Cas. (BNA) 712,
59 Empl. Prac. Dec. P 41,667, 61 USLW 2088,
RICO Bus.Disp.Guide 8057
 M. Maureen POLSBY, Plaintiff-Appellant,
v.
Thomas CHASE; Irwin J. Kopin; Mark Hallett; Daniel R.
Weinberger; Giovanni Dichiro; Marinos Dalakis; Richard E.
Carson; Murray Goldstein, in his official capacity as
director of the National Institute of Neurologic and
Communicative Disorders and Stroke; James B. Wyngaarden, in
his official capacity as director of the National Institutes
of Health; Louis W. Sullivan, Secretary of Health and Human
Services, Defendants-Appellees.
 No. 92-1176.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1992.
Decided July 29, 1992.
As Amended Aug. 12, 1992.
 
 Katherine Jo Henry, argued, Mayer, Brown & Platt, Washington, D.C., (Roy T. Englert, Jr., M. Lindsay Childress, Laurie Rubenstein, on brief), for plaintiff-appellant.
 Larry David Adams, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., Baltimore, Md., Elizabeth Jordan Gianturco, Office of the Gen. Counsel, Dept. of Health & Human Services, Washington, D.C., on brief), for defendants-appellees.
 Before WILKINSON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and WILLIAMS, Senior United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 CHAPMAN, Senior Circuit Judge:
 
 
 1
 M. Maureen Polsby, M.D., brought this suit in the United States District Court for the District of Maryland against various persons at the National Institute of Health ("NIH") and the Department of Health and Human Services ("HHS") in their official and personal capacities, alleging sex discrimination under Title VII of the Civil Rights Act of 1964, 29 U.S.C. §§ 2000e et seq. (1982), and various common law torts. Polsby sought declaratory and injunctive relief as well as damages. The district court dismissed most of the defendants and all of the claims except for the Title VII claim and refused Polsby leave to amend her complaint to add a claim for violations of RICO. The court then granted the defendants' motion for summary judgment on the grounds that Polsby had failed to bring the complaint to the attention of an EEO counselor within thirty days of the complained of act and that equity did not warrant a waiver or tolling of the time limit. We affirm.
 
 I.
 
 2
 Polsby complains of numerous acts by Dr. Thomas Chase, Director of the National Institute of Neurological and Communicative Disorders and Stroke (NINCDS),[1] a division of the NIH, and others which she claims were sexually discriminatory, while she worked at NINCDS from 1983 to 1985. Polsby consulted a person whom she mistakenly thought was an EEO counselor about the sex discrimination. The person did not inform her that a complaint must be brought to the attention of an EEO counselor within thirty days. She also sought the advice of others, including at least one attorney, who erroneously told her that she had six months before being time barred.
 
 
 3
 In June 1985, Polsby was informed that her contract would not be extended another year. She left NINCDS on July 9, 1985, and talked with an EEO counselor on December 13, 1985. The counselor stated that "while [her] complaint was initiated more than 30 days after the alleged discrimination, counseling would proceed and the timeliness of the complaint would be determined by the [HHS] if a formal complaint is filed." Polsby filed a formal administrative complaint in January 1986.
 
 
 4
 In December 1985, Polsby, seeking board certification, requested that a letter, from NINCDS describing her training at the department, be sent to the American Board of Psychiatry and Neurology. Dr. Hallett, who was not "formally aware" of the complaint, wrote the letter on December 24, 1985. After discussing the training program in which Polsby was involved, he added that, while Polsby did receive training, a year's credit toward residency "training" requirements was no longer being given. After learning that she would not receive the year's credit, she twice asked Hallett to correct this, claiming that this policy took effect after she had accepted the position and that Chase assured her that she would receive residency credit. Hallett refused the request. Polsby claims that thereafter the defendants began to slander her professional competence.
 
 
 5
 In March 1988, the Proposed Disposition of her claim, which became the Final Disposition, was issued and simply noted that Polsby stated that she did not file within thirty days because of erroneous advice. While the Disposition made no mention of abandoning the statutory time limit, Polsby assumed that it was no longer an issue. The Proposed Disposition also found that the evidence did not support Polsby's claims.
 
 
 6
 Upon the Proposed Disposition becoming final, Polsby filed a pro se complaint, with the help of an attorney, alleging sex discrimination in violation of Title VII and certain common law torts. The district court dismissed the common law claims and some of the defendants. On September 25, 1989, HHS filed an answer admitting that Polsby's complaint had been "accepted" by the HHS and that she had exhausted her administrative remedies. It raised no affirmative defenses. In the fall of 1989, Polsby retained counsel.
 
 
 7
 Polsby also claims that, in December 1989, she discovered that some of the defendants had appropriated her research and used it in a scientific article which they had published without her consent. Polsby asserts that, because the article also contained fabricated data, it harmed her reputation. She moved for leave to amend her complaint to add RICO and common law tort claims and join other defendants. The court denied the motion, finding that the claims were simply a restatement of the dismissed claims involving the same defendants and that Title VII was her exclusive remedy.
 
 
 8
 On July 15, 1992, HHS moved for summary judgment on the grounds that the claims were time barred and that Polsby could not make out a prima facie case of retaliation. The court granted the motion on the first ground and did not discuss the second. Polsby appeals, raising the following issues: 1) whether Polsby's claim of sex discrimination under Title VII is time barred; 2) whether Polsby's claim of retaliatory sex discrimination should have survived summary judgment; and 3) whether the district court abused its discretion in denying Polsby leave to amend her complaint to add a RICO claim. In reviewing the district court's decision, we keep in mind that "summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir.), cert. denied, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987).
 
 II.
 
 9
 A. Whether Polsby's claim of sex discrimination under Title VII is time barred.
 
 
 10
 A complainant has thirty days to bring to the attention of an EEO counselor allegations of sex discrimination. 29 C.F.R. § 1613.214(a)(1)(i) (1985).[2] This time limit is not jurisdictional. See Irwin v. Veterans Admin., 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). It acts as a statute of limitations and, therefore, is subject to equitable as well as regulatory exceptions. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). There is no dispute that Polsby failed to bring the allegations of sex discrimination to the attention of an EEO counselor within thirty days. The issue is whether Polsby is entitled to equitable relief to allow her to proceed despite this failure.
 
 The Supreme Court has recently stated:
 
 11
 Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.
 
 
 12
 Irwin, 498 U.S. at ----, 111 S.Ct. at 457-58 (footnotes omitted). Equitable relief is reserved for only the most deserving complainants.
 
 
 13
 Polsby claims lack of notice of the thirty day requirement, but she admits that she does not know whether NIH has posted notice of the time limits. She states that there were many notices posted on bulletin boards, but that she was unaware of any indicating the time limit for sex discrimination complaints. She does not claim that any of the original defendants misrepresented the time limits or otherwise misled her. A grant of equitable relief requires a diligent search by Polsby. "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984). Likewise, we have stated:
 
 
 14
 The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.
 
 
 15
 Price v. Litton Business Sys., 694 F.2d 963, 965-66 (4th Cir.1982); see Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir.1987). In a factually similar case, the Fifth Circuit remarked:
 
 
 16
 In the case at bar, plaintiff's equitable tolling argument is entirely dependent on [the defendant's] failure to post any notice of EEOC procedures and on plaintiff's ignorance of her rights under Title VII. These facts as presented here are insufficient to support equitable tolling. Plaintiff makes no allegation that [the defendant] misled her concerning her Title VII rights or misrepresented any of the facts which would support her cause of action.
 
 
 17
 Cruce v. Brazosport Indep. Sch. Dist., 703 F.2d 862, 864 (5th Cir.1983).
 
 
 18
 Polsby did consult during this time period with at least one attorney, who advised her that she had six months in which to bring her complaint to the attention of an EEO counselor. While it is unfortunate that she received this erroneous advice, the HHS does not bear responsibility for the mistaken counsel of an attorney with whom Polsby consulted.
 
 
 19
 Polsby complains bitterly that a person described to her as an EEO counselor and with whom she first consulted did not inform her of the time limit. Polsby, however, does not claim that any of the defendants led her to make the assumption that the person was an EEO counselor. Again, HHS should not have to bear responsibility for mistakes by Polsby where it did nothing to mislead her. As stated by the Supreme Court, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr., 466 U.S. at 152, 104 S.Ct. at 1726. Under these circumstances, we find that waiver and equitable tolling are inappropriate.
 
 
 20
 Polsby also contends that the time bar defense is an affirmative defense which, according to Fed.R.Civ.P. 8(c), must be raised in the answer. Polsby points out that HHS has not raised the defense. However, we have allowed affirmative defenses to be pled in pre-trial motions and cannot find any abuse of discretion by the district court in permitting HHS to raise this defense after the answer. See Peterson v. Air Line Pilots Ass'n. Int'l., 759 F.2d 1161, 1164 (4th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).
 
 
 21
 Polsby further claims that a federal regulation requires HHS to extend the time limit where the complainant did not know of the time limit. The regulation provides in pertinent part:
 
 
 22
 The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; (ii) or for other reasons considered sufficient by the agency.
 
 
 23
 29 C.F.R. § 1613.214(a)(4) (1985) (emphasis added). Polsby, however, misconstrues the regulation. It is clear that an extension of the time limit is mandatory where the complainant has not been notified of the time limits and was not otherwise aware of them. Use of the conjunction requires that both parts be satisfied before the extension of time is mandatory. Polsby, however, has failed to demonstrate that the NIH did not post notice of the time limits. She alleges simply that she did not know what was posted and only believed that no notice existed.
 
 
 24
 B. Whether Polsby's claim of retaliatory sex discrimination should have survived summary judgment.
 
 
 25
 Polsby argues that the district court's holding that the underlying sex discrimination claims were time barred should not have foreclosed the retaliatory claims. A complainant may request consolidation of a reprisal claim with the underlying claims as long as the request is made "within 30 calendar days of occurrence of the act which forms the basis of the allegation." 29 C.F.R. § 1613.262(b) (1985). Polsby asserts that the letter from Hallett to the American Board of Psychiatry and Neurology explaining the training program was a retaliatory act. However, the complained of letter was written on December 24, 1985, more than thirty days before the formal complaint was amended on February 19, 1986, to include the alleged acts of retaliation.
 
 
 26
 Polsby also claims that her requests to Hallett asking him to correct the allegedly incorrect information in the letter constituted a second act of retaliation. If we were to accept such a proposition, the time limit would be devoid of any effect. A complainant could easily circumvent the time limit by simply demanding that the perpetrator of the discrimination right the wrong, and, if the person declines, thereby create a second retaliatory action with a fresh thirty day time limit.[3]
 
 
 27
 Regardless of the foregoing, we find that Title VII provides no cause of action against a former employer by an ex-employee for acts of retaliation after the employment had ended. Section 2000e-3(a) states:
 
 
 28
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 
 
 29
 42 U.S.C. § 2000e-3(a) (1982). The statute specifically indicates that it is unlawful for an employer to retaliate against an employee or an applicant for employment. No mention is made of former employees. Given that Congress considered it necessary to add "applicant for employment" as a person distinct from an "employee" to be protected from retaliation, Congress could certainly have also included a former employee if it had desired.
 
 
 30
 Furthermore, the type of practices which are forbidden are those particularly related to employment. Specifically, "unlawful employment practice" is defined in part as the failure or refusal "to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1982). The definition comprises discrimination with respect to certain aspects of employment. Title VII does not redress discriminatory practices, however unsavory, which occur after the employment relationship has ended.[4] As we have stated, "Title VII is not a 'bad acts' statute." Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir.1989).
 
 
 31
 While we are aware that most circuits addressing this issue have interpreted "employee" to include a former employee, see Bailey v. USX Corp., 850 F.2d 1506 (11th Cir.1988); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052 (2d Cir.1978); Rutherford v. American Bank of Commerce, 565 F.2d 1162 (10th Cir.1977), we find their reasoning unpersuasive and follow the lead of the Seventh Circuit. See Reed v. Shepard, 939 F.2d 484 (7th Cir.1991). The circuits which have read former employee into the statute have based their decisions entirely on dubious considerations of policy and the supposed purpose of the statute, ignoring its clear language. The Supreme Court has often reminded lower courts that the language of a statute should be interpreted according to its ordinary, contemporary, and common meaning.
 
 
 32
 The task of resolving the dispute over the meaning of [a section to a statute] begins where all such inquiries must begin: with the language of the statute itself.... In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."
 
 
 33
 United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citations omitted).
 
 
 34
 Furthermore, as articulated in Chief Judge Tjoflat's concurrence in Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1536-42 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990), and overruled on other grounds, McGinnis v. Ingram Equip. Co., 918 F.2d 1491 (11th Cir.1990) (en banc), the paucity of legislative history, if offering any guidance on the issue, and policy considerations actually support a normal reading of the statute without adding former employees. The purposes of Title VII are (1) to afford minorities the opportunity to "be hired on the basis of merit," see 110 Cong.Rec. 6549 (1964) (remarks of Senator Humphrey introducing the bill), and (2) to "eliminate ... discrimination in employment based on race, color, religion, or national origin." H.R.Rep. No. 914, 88th Cong., 2d Sess., reprinted in 1964 U.S.Code Cong. & Admin.News 2355, 2391, 2401; see H.R.Rep. No. 238, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin.News 2137, 2141 (adding gender).
 
 
 35
 To accomplish these goals, Congress created the Equal Employment Opportunity Commission. The EEOC attempts to achieve these goals through the "preferred" methods of "cooperation and voluntary compliance." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). If these methods fail, then the EEOC or individual complainant may seek equitable remedies from the courts. Section 2000e-5(g) provides:
 
 
 36
 If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems proper.
 
 
 37
 42 U.S.C. § 2000e-5(g) (1982) (emphasis added). We note that no legal remedies are provided. See Eastman v. Virginia Polytechnic Institute and State Univ., 939 F.2d 204, 208 (4th Cir.1991) ("Title VII has consistently been limited to allow only equitable relief such as reinstatement, back pay, and injunctions against further violations.").
 
 
 38
 These equitable remedies are particularly suited to making a complainant whole without penalizing the employer. See Van Hoomissen v. Xerox Corp., 368 F.Supp. 829, 836 (N.D.Cal.1973) (Congress "had in mind a wide panorama of equitable tools that courts might use but did not intend that courts would punish defendants by imposing upon them large money awards.") In successful Title VII actions, an applicant for employment will probably be hired for the job which was discriminatorily denied. Likewise, an employee will probably be promoted or reinstated to the job which was discriminatorily denied. However, it is much more difficult to fashion equitable relief for a former employee who was the victim of post-employment retaliation. While relief must be in the form of making the former employee whole as if the retaliatory act had not occurred, the equitable means to accomplish this goal are lacking.[5] Such relief would entail calculating future damages and is far too speculative.
 
 
 39
 For example, if the former employer wrote poor references in retaliation, the employee would have to show that but for the poor references, she would have received one of the jobs she was seeking. See Sherman, 891 F.2d at 1538. If successful, she then must give the court evidence as to which job, pay scale, promotions, bonuses, etc. ..., she would have received. See id. Because employment opportunities greatly differ from each other, speculation would necessarily rule any calculations. Although a situation may arise where fashioning equitable relief presents no problems, the better solution is to allow the ex-employee to seek either state or other federal law remedies against the former employer or the same Title VII remedies against the prospective employer who based its decision not to employ the ex-employee on the fact that she sought Title VII relief from a prior employer.[6] Otherwise, a decision incorporating "former employee" into "employee" could lead to a situation where a former employee, for whom the court could not fashion equitable relief, finds that all other judicial remedies are preempted, see Brown v. GSA, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976) (Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."), and would go a long way to prove the adage that hard cases make bad law.
 
 
 40
 Regardless of legislative history and policy considerations, the clear language of the statute refers to employees and applicants for employment and does not mention former employees. The statute also specifies that the practices which are prohibited are those generally involving discrimination in some aspect of employment, and not post-employment activity. As previously stated, we are bound to follow the clear language of the statute absent a " 'scrivener's error' producing an absurd result." Union Bank v. Wolas, --- U.S. ----, ----, 112 S.Ct. 527, 534, 116 L.Ed.2d 514 (1991) (Scalia, J. concurring). However, coupled with a discussion of the policy considerations of Congress, it becomes even more likely that Congress said what it meant. Hence, Polsby's claims of retaliatory acts, including the letter to the neurology board and the slander occurring after employment, are not cognizable under Title VII.
 
 
 41
 C. Whether the district court abused its discretion in refusing Polsby leave to amend her complaint to add a RICO claim.
 
 
 42
 First, we note that the denial by a district court of leave to amend a complaint is reviewed under the abuse of discretion standard. Harman v. First American Bank (In re Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 481 (4th Cir.1992). Polsby claims that the misappropriation of her research and the harm resulting from the publication of her name on work with fabricated data is actionable regardless of sex discrimination. While she may be correct, her allegations do not support a claim for a RICO violation. Polsby states that her RICO claim alleges "that the defendants appropriated her research projects, fabricated part of the research data, and published the research, in some instances listing Dr. Polsby as fourth author without her knowledge or permission and in other instances not crediting her at all." (Appellant's brief, 48). Polsby admits that her discrimination claims are not part of her RICO claim, leaving only the allegations of appropriation of her work. Such allegations fall short of meeting the requirements of a RICO claim.
 
 
 43
 One of the requirements of a RICO claim is that a pattern of racketeering activity exists. To prove "a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original). In delineating this continuity requirement, the Court explained: " 'Continuity' is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241, 109 S.Ct. at 2902.
 
 
 44
 Polsby's allegations, however, lack any evidence of continuity to establish a pattern of racketeering activity. Polsby alleges simply that the defendants appropriated some of her work. The perpetrators are few, there is but one victim, and the instance isolated. "To allow a 'pattern of racketeering' to flow from a single, limited scheme such as this one would undermine Congress' intent that RICO serve as a weapon against on-going unlawful activities whose scope and persistence pose a special threat to social well-being." International Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 155 (4th Cir.1987). As we have also stated, "If the pattern requirement has any force whatsoever, it is to prevent this type of ordinary ... fraud from being transformed into a federal RICO claim." Menasco, Inc. v. Wasserman, 886 F.2d 681, 685 (4th Cir.1989).
 
 
 45
 For the foregoing reasons, we affirm the decision of the district court.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 NINCDS is now the National Institute of Neurological Disorders and Stroke
 
 
 [2]
 The district court refers to the 1987 Code of Federal Regulations. However, because the cause of action arose in 1985, we rely on the 1985 Code of Federal Regulations
 
 
 [3]
 We note that a "continuing violation" is distinct from a violation arising simply from the failure to correct a past discrimination. A "continuing violation" involves a continuing employment practice which is discriminatory. See Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)
 
 
 [4]
 As discussed below, Title VII does redress discriminatory practices by a prospective employer who denies employment to an applicant who has participated in a Title VII action against a former employer. See infra pages 1365-66
 
 
 [5]
 For example, reinstatement is not an option because the claimed retaliatory acts occurred after termination. Of course, if an employee has a claim against the former employer for an "unlawful" termination in retaliation for the employee seeking redress under Title VII, the cause of action is cognizable under 42 U.S.C. § 2000e-3(a) (1982)
 
 
 [6]
 Section 2000e-3(a) provides that discrimination by an employer against an employee or applicant for employment who has participated in a Title VII action is an unlawful employment practice. 42 U.S.C. § 2000e-3(a) (1982)