

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-1994

# Charlton v. Paramus Board of Education, et al.

Precedential or Non-Precedential:

Docket 93-5498

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Charlton v. Paramus Board of Education, et al." (1994). *1994 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 93-5498

———————

ANN MERY CHARLTON,
                    Appellant

v.

PARAMUS BOARD OF EDUCATION; HARRY
GALINSKY; MARIE HAKIM; BEVERLY BARBOUR;
JOY PERRAUDIN; RICHARD SCHWEIDEL; MYRA LUSTBERG;
RICHARD ZANELLA; JANICE DIME, Individually,
                    Appellees

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 92-01906)

———————

Submitted Under Third Circuit LAR 34.1(a)
December 23, 1993

PRESENT:  STAPLETON, HUTCHINSON and ROTH, <u>Circuit Judges</u>

(Filed   June 1, 1994)

———————

Ms. Ann Mery Charlton
100 Beckwith Place
Rutherford, NJ     07070
        Appellant <u>Pro</u> <u>Se</u>

Mark J. Blunda, Esquire
Lester Aron, Esquire
Cherie L. Maxwell, Esquire
Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross
One Riverfront Plaza
Newark, NJ     07102
        Attorneys for Appellees

1

HUTCHINSON, <u>Circuit Judge</u>.

<u>Pro</u> <u>se</u> appellant, Ann Mery Charlton ("Charlton"), appeals an order of the United States District Court for the District of New Jersey granting summary judgment to appellees, the Paramus Board of Education ("school board") and various officials within the Paramus School District ("school district"). The district court held that Charlton had not shown any genuine disputes of material fact on her claims of discrimination, hostile work environment, and retaliation and so could not legally recover. Charlton argues on appeal that the evidence she pointed to in opposition to the school's motion for summary judgment did raise a genuine issue of triable fact on her claims for discrimination. She also contends that the district court erred as a matter of law in dismissing her retaliation claim because she was no longer an employee of the school district at the time the allegedly retaliatory conduct occurred. While we agree with the district court's disposition of her discrimination and hostile work environment claims, we conclude the district court erred in holding that Charlton had to be an employee at the time of the allegedly retaliatory conduct. Accordingly, we will reverse the district court's order granting summary judgment on the retaliation claim and remand for its consideration on the merits.

Ann Mery Charlton taught in the Paramus School District for seventeen years, rising to the level of tenured music supervisor in September of 1988. Charlton alleges that the school district ultimately terminated her employment because her supervisor, the Assistant Superintendent of Schools for the Paramus School District, Janice Dime ("Dime"), made unwanted sexual advances that Charlton rebuffed. Charlton claims Dime "then conspired with others [lesbian teachers] to embarrass, discredit and punish Appellant for her rejection of Dime." Brief of Appellant at 11 (alteration in original). This campaign, Charlton claims, led to the school district's initiating tenure revocation proceedings against her. The tenure proceedings eventually resulted in Charlton losing her job.

The school board claims it took adverse employment action against Charlton because she had spread "vicious and false rumors about the sexual preferences and sexual activities of Paramus administrators and employees, and falsely implied that the district's hiring practices were influenced by the sexual persuasion of the people to be hired or promoted or the sexual relationship administrators had with these people." Brief of Appellees at 10. Moreover, the school officials claim that Charlton used malicious and inappropriate language when referring to Paramus administrators or other teachers on numerous occasions. They also contend Charlton "created and implemented a plan to gather information about [Dime's] personal life in order to discredit her and prevent her from becoming the next

4

Superintendent."  Id. at 11.  Charlton's activities in this regard supposedly included the creation of a dossier on Dime containing Dime's divorce decree, mortgage, and title papers relating to her car.

Charlton challenged the school's decision to terminate her before a state administrative board.  It ruled against her and the New Jersey Superior Court affirmed the decision. Charlton filed this Title VII discrimination action while her petition to the New Jersey Supreme Court to certify an appeal from the Superior Court's order was pending.  The school officials filed a motion for a stay of the federal proceedings while Charlton's petition for certification was pending.  The district court granted the stay.

After the New Jersey Supreme Court's denial of certification, Charlton recommenced the pursuit of her discrimination action.  She alleges the administrators in the Paramus School District then triggered proceedings to revoke her teaching certificate ("revocation proceeding") in retaliation for her Title VII suit with the goal of insuring that she would be unable to teach again in New Jersey.[0]

Charlton alleges that the Paramus School Board initiated the revocation proceeding "in retaliation for filing my complaint of sexual harassment and sexual discrimination against

_____

[0]As of the date of the district court opinion, the revocation proceedings had not been resolved.  Revocation of her certificate would make Charlton ineligible for professional employment in any New Jersey public school.  The termination of her tenure only ended her employment at the Paramus School District.

Janice Dime, 'assistant superintendent' of schools and the Board in Federal Court." Appellant's Appendix ("App.") at A-29.[0] In support of her position that summary judgment on the retaliation claim was inappropriate, Charlton proffered a letter indicating that the school board, through its attorney Lester Aron, contacted the State Board of Examiners ("state board") on November 11, 1992, about three weeks after Charlton had reinstituted her Title VII action, to inquire about the status of revocation proceedings. Charlton's employment by the school district had ended almost two years earlier on December 17, 1990. Charlton also proffered a statement from her former attorney. She alleges he told her, in January 1991, that the school district would not seek revocation of her teaching license if she did not appeal the Commissioner of Education's decision sustaining the tenure charges to the state board.

The district court granted summary judgment in favor of the school board and its officials on Charlton's discrimination and retaliation claims. It held that a number of the defendants were improperly named because the claims against them were outside the scope of the Equal Employment Opportunity Commission ("EEOC") charges Charlton had filed or, alternately, that the authority they had over Charlton was insufficient to meet Title VII's definition of employer. App. at 16-17, 19-21. For those defendants that remained properly named, the district court

---

[0]Although Charlton did not include this allegation in her initial complaint, the district court permitted Charlton to amend her complaint to add it and the appellees then included the retaliation charge in their motion for summary judgment.

held that Charlton was precluded from relitigating her qualifications for the position because the state agency's administrative law judge ("ALJ") had supported the termination, and thus she could not make out a prima facie Title VII case. Id. at 24. In addition, the district court held Charlton could not relitigate the harassment issue after the state courts had resolved it against her. Id. Finally, the court dismissed Charlton's hostile work environment claim because her allegations did not set forth a prima facie case. Id. at 27.

The district court dismissed the retaliation claim arising out of the revocation proceeding "for the simple reason that the Board was not plaintiff's employer at the time of these events. Thus, its actions did not constitute an 'unlawful employment practice' proscribed by Title VII." Id. at 25-26 (citing Ferguson v. Mobil Oil Corp., 443 F. Supp. 1334 (S.D.N.Y. 1978), aff'd without opinion, 607 F.2d 995 (2d Cir. 1979)).

II.

We have jurisdiction over the district court's final order granting summary judgment pursuant to 28 U.S.C.A. § 1291 (West 1993). Summary judgment is appropriate if the motion, supported by the proper material, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Facts that could alter the outcome are 'material facts,' see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and disputes are 'genuine' if evidence exists" to support them.

7

Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The defendant meets the test where there exists an absence of evidence to support the plaintiff's case. Celotex, 477 U.S. at 325. "'[T]he plaintiff must present affirmative evidence to defeat a properly supported motion for summary judgment.'" Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 256-57).

III.

A.

We will affirm the district court's decision to dismiss the discrimination and hostile work environment claims for the reasons set forth in its opinion. As the district court correctly held, Charlton's complaint named improper defendants under Title VII, exceeded the scope of her EEOC complaint and failed to make out a prima facie case on her discrimination claims against the remaining defendants. We confine further analysis to Charlton's claim that the school board activated a procedure to revoke her teaching certificate in retaliation for her reinstitution of her Title VII suit.[0]

> Section 703 of Title VII provides:
> It shall be an unlawful employment practice
> for an employer--

---

[0]After Charlton filed her suit, the district court suspended consideration pending resolution of the state proceedings. Charlton requested that the district court reinstate her complaint on September 25, 1992, and the district court granted her application on October 15, 1992.

8

> (1) to fail or refuse to hire or to
> discharge any individual, or otherwise
> to discriminate against any individual
> with respect to his compensation, terms,
> conditions, or privileges of employment,
> because of such individual's . . . sex
> . . . .

42 U.S.C.A. § 2000e-2(a)(1) (West 1981). Section 704 of

Title VII further provides:

> It shall be an unlawful employment practice
> for an employer to discriminate against any
> of his employees . . . because he has opposed
> any practice made an unlawful employment
> practice . . . or because he has made a
> charge . . . under this subchapter.

Id. § 2000e-3(a) (West 1981).

The district court held that the school board's action

could not have violated Title VII because Charlton was no longer

employed by the school district when the school board allegedly

precipitated the revocation proceeding.

The district court relied on Ferguson v. Mobil Oil

Corp., 443 F. Supp. 1334 (S.D.N.Y. 1978), aff'd without opinion,

607 F.2d 995 (2d Cir. 1979). In Ferguson, the plaintiff alleged

that he either sought and was denied employment, or was fired

from positions, with three other similar corporations following a

racially motivated termination by the defendant oil company. He

claimed the other corporations denied his employment applications

or fired him because Mobil, his previous employer, had

"blacklisted" him because of his race. Id. at 1336. The

district court rejected Ferguson's claim. In an alternate

9

holding, the court concluded that an employer's post-employment "blacklisting" was not prohibited under section 703 of Title VII. Id. at 1339.

> [S]uch activity [cannot] fit within the terms of Section 703(a) or (d) of Title VII. This conclusion evolves from the realization that although such behavior is obviously reprehensible and probably tortious, it is clearly not discriminatory. Rather, it would appear more closely analogized to the state law claims of "slander" and "tortious interference with an employment relationship[.]"
>
> It would also appear that the factual positions of the parties after the plaintiff's discharge were not such as to give rise to a violation of Title VII under the expansive interpretations of the courts because defendant's conduct in no way could constitute an "employment practice", as required by the statute.

Id. (citations and footnote omitted) (emphasis added).

Ferguson is distinguishable and has little persuasive force in Charlton's case. There are two reasons. First, the United States Court of Appeals for the Second Circuit later specifically allowed consideration of a Title VII post-employment blacklisting claim that had not been asserted before the EEOC because it had a reasonable relation to the EEOC charge. See Silver v. Mohasco Corp., 602 F.2d 1083, 1090-91 (2d Cir. 1979), rev'd on other grounds, 447 U.S. 807 (1980). Additionally, the discrimination claim in Ferguson was brought under section 703 of Title VII. Ferguson, 443 F. Supp. at 1336, 1339. Charlton's claim for retaliatory action is brought under section 704(a). A

10

section 704(a) claim for retaliation is quite different from a discrimination claim under section 703.  Retaliation claims can often arise post-employment when an employee who has been terminated files an action under Title VII charging discrimination in discharge only to meet continued harassment from its employers in retaliation for the filing of the action.  Accordingly, because we are not fully persuaded of the validity of Ferguson's holding, even in the context of section 703 claims,[0] we will independently examine the application of section 704(a) to post-employment retaliatory acts.

There is a split of federal authority on this issue.  One line of cases holds that termination of the employment relationship does not preclude a claim for retaliation under Title VII or other statutes prohibiting invidious discrimination.  See, e.g., Passer v. American Chem. Soc'y, 935 F.2d 322, 330-31 (D.C. Cir. 1991) (interpreting parallel provision of Age Discrimination in Employment Act ("ADEA")); Sherman v. Burke

---

[0]Even under section 703, many courts have refused to strictly require an employment relationship if the defendant had the ability to directly affect a plaintiff's employment opportunities.  See Shehadeh v. Chesapeake & Potomac Tel. Co., 595 F.2d 711, 721-22 (D.C. Cir. 1978) (section 703 applies when employer unlawfully interferes with former employee's future employment opportunities); Sibley Memorial Hosp. v. Wilson, 488 F.2d 1338, 1341 (D.C. Cir. 1973) (the ability of hospital to affect employment opportunities is enough to subject hospital to a Title VII claim); accord Zaklama v. Mt. Sinai Medical Ctr., 842 F.2d 291, 293-94 (11th Cir. 1988) (Title VII plaintiff may claim against person who had ability to affect employment status); Doe v. St. Joseph's Hosp., 788 F.2d 411, 422-24 (7th Cir. 1986) (reaching same result as Zaklama noting that statutory language precludes illegal conduct against "any individual" and not just "employee"); LeMasters v. Christ Hosp., 777 F. Supp. 1378, 1379-81 (S.D. Ohio 1991) (collecting cases).

Contracting, Inc., 891 F.2d 1527, 1531–32 (11th Cir.) (interpreting Title VII), cert. denied, 498 U.S. 943 (1990); Bailey v. USX Corp., 850 F.2d 1506, 1509–10 (11th Cir. 1988) (Title VII); Pantchenko v. C.B. Dolge Co., 581 F.2d 1052, 1054–55 (2d Cir. 1978) (Title VII); Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1165–66 (10th Cir. 1977) (Title VII); Dunlop v. Carriage Carpet Co., 548 F.2d 139, 147 (6th Cir. 1977) (interpreting anti-retaliation provision in Fair Labor Standards Act); EEOC v. Metzger, 824 F. Supp. 1, 2–3 (D.D.C. 1993) (Title VII); Cohen v. S.U.P.A. Inc., 814 F. Supp. 251, 260–61 (N.D.N.Y. 1993) (ADEA); Berry v. Stevinson Chevrolet, 804 F. Supp. 121, 135–36 (D. Colo. 1992) (Title VII); cf. EEOC v. Ohio Edison Co., 7 F.3d 541, 544–45 (6th Cir. 1993); see also Christopher v. Stouder Memorial Hosp., 936 F.2d 870, 875–77 (6th Cir.) (focusing on ability to "affect" employment opportunities in analyzing Title VII section 704 retaliation claim), cert. denied, 112 S. Ct. 658 (1991).

Using a narrow, literal reading of Title VII, other courts of appeals have held that the anti-retaliation provision of Title VII becomes inapplicable after the employment relationship ceases. See Polsby v. Chase, 970 F.2d 1360, 1365 (4th Cir. 1992), vacated sub nom. Polsby v. Shalala, 113 S. Ct. 1940 (1993); Reed v. Shepard, 939 F.2d 484, 492–93 (7th Cir. 1991).

In Polsby, the court of appeals expressly relied on a literal reading of section 704(a) to hold that Title VII does not protect individuals who are no longer "employees."

12

> The statute specifically indicates that it is unlawful for an employer to retaliate against an employee or an applicant for employment. No mention is made of former employees. Given that Congress considered it necessary to add "applicant for employment" as a person distinct from an "employee" to be protected from retaliation, Congress could certainly have also included a former employee if it had desired.

Polsby, 970 F.2d at 1365; see also Reed, 939 F.2d at 493 (analyzing issue in one paragraph and concluding "it is an employee's discharge or other employment impairment that evidences actionable retaliation and not events subsequent to and unrelated to his employment.") (emphasis in original). The appeals in Polsby also noted the practices that Title VII specifically covers concern the employer-employee relation. Polsby, 970 F.2d at 1365 ("The definition [of unlawful employment practice] comprises discrimination with respect to certain aspects of employment. Title VII does not redress discriminatory practices, however unsavory, which occur after the employment relationship has ended.") (footnote omitted). The court of appeals in Polsby concluded that the remedies afforded a successful Title VII plaintiff indicate Congress did not intend them to apply to post-employment acts.

> [The] equitable remedies [of Title VII] are particularly suited to making a complainant whole without penalizing the employer. In successful Title VII actions, an applicant for employment will probably be hired for the job which was discriminatorily denied. Likewise, an employee will probably be promoted or reinstated to the job which was discriminatorily denied. However, it is much more difficult to fashion equitable relief

13

> for a former employee who was the victim of post-employment retaliation. While relief must be in the form of making the former employee whole as if the retaliatory act had not occurred, the equitable means to accomplish this goal are lacking. Such relief would entail calculating future damages and is far too speculative.

Id. at 1366 (footnote and citation omitted).[0]

The courts that have held Title VII or other similar statutes do reach post-employment acts have interpreted the term "employee" broadly to "'include[] a former employee as long as the alleged discrimination is related to or arises out of the employment relationship.'" Passer, 935 F.2d at 330 (quoting EEOC v. Cosmair, Inc., 821 F.2d 1085, 1088 (5th Cir. 1987)). The rationale for this construction is that "a strict and narrow interpretation of the word 'employee' to exclude former employees would undercut the obvious remedial purposes of Title VII." Bailey, 850 F.2d at 1509. "To read the statute otherwise would be to deny protection to any person who has suffered discharge or termination due to unlawful discrimination." Passer, 935 F.2d at 331. The courts that have extended anti-retaliation protection

---

[0]The Supreme court vacated the court of appeals' decision in Polsby "in light of the position asserted by the Acting Solicitor General in his brief for the United States filed March 5, 1993." Polsby, 113 S. Ct. at 1940. The government argued that the issue of whether former employees are protected was not argued in the court of appeals. It stated: "[B]ecause the decision of the court of appeals constitutes an alternative ground for decision unnecessary to the result and does not rest on an adversary presentation of the question, there is no reason for this Court to consider the question at this time." Brief for Respondents at 9, Polsby v. Shalala, 113 S. Ct. 1940 (1993) (No. 92-966). Thus, the persuasive force of Polsby is of dubious value.

14

have done so where the retaliation results in discharge from a later job, a refusal to hire the plaintiff, or other professional or occupational harm.  See, e.g., Passer, 935 F.2d at 331 (former employer deprives ex-employee of "rare and prestigious" professional laurel in retaliation for filing discrimination claim);  Sherman, 891 F.2d at 1532 (former employer persuades new employer to fire ex-employee); Rutherford, 565 F.2d at 1164-65 (former employer hinders ex-employee's search for work).  We agree with this rationale and conclude that Congress did not intend Title VII's protection against retaliation to end with termination of employment when it is the termination itself that gives rise to the protected act of filing a Title VII action.

Under the district court's holding here, an employer could threaten and take retaliatory action against a wrongfully discharged employee without fear of federal anti-discrimination laws.  Title VII prohibits retaliation "to protect the employee who utilizes the tools provided by Congress to protect his rights." Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990) (citation omitted).  The need for protection against retaliation does not disappear when the employment relationship ends. Indeed, post-employment blacklisting is sometimes more damaging than on-the-job discrimination because an employee subject to discrimination on the job will often continue to receive a paycheck while a former employee subject to retaliation may be prevented from obtaining any work in the trade or occupation previously pursued.  Such would be the case with Charlton if her teaching certificate is revoked.

Under the district court's holding, fear of unremediable reprisal would chill Title VII claims for discriminatory discharges. We think Congress hardly intended to permit employers to retaliate with impunity against a former employee after an assertion of Title VII rights. A strict and narrow reading of the term "employee" does just that.[0]

Accordingly, we join the majority of courts that have considered this issue and hold that an ex-employee may file a retaliation action against a previous employer for retaliatory conduct occurring after the end of the employment relationship when the retaliatory act is in reprisal for a protected act within the meaning of section 704 and arises out of or is related to the employment relationship.[0] Charlton alleged the school district acted to revive state proceedings for revocation of her teaching certificate in retaliation for her own decision to continue pursuing a Title VII action challenging her termination as discriminatory. Therefore, we hold the district court incorrectly held that Charlton could not prevail on her retaliation claim because she was no longer an employee when the school board contacted the state board about the long dormant proceedings for revocation of Charlton's teaching certificate.

---

[0]We note that the United States Supreme Court has looked favorably upon interpretations of remedial statutes that are consistent with the "purpose and objective" of the prohibitions present in the statute. See NLRB v. Scrivener, 405 U.S. 117, 122 (1972); see also Ohio Edison, 7 F.3d. at 545.

[0]See generally Patricia A. Moore, Parting is Such Sweet Sorrow: The Application of Title VII to Post-Employment Retaliation, 62 Fordham L. Rev. 205, 219-23 (1993) (suggesting similar two-step analysis to determine whether allegation of post-employment retaliation is actionable under section 704).

B.

Although we reject the district court's rationale for granting summary judgment to the school district and its officials on Charlton's retaliation claim, that order should still be affirmed if Charlton has not produced evidence in support of her allegations that raise a genuine issue of triable fact. See EEOC v. Westinghouse Elec. Corp., 930 F.2d 329, 331 (3d Cir. 1991). On the record now before us, we think the school district has yet to demonstrate the absence of any issue of material fact whose resolution in Charlton's favor could sustain her retaliation claim.

In order to succeed on a claim of discriminatory retaliation, a plaintiff must demonstrate that: "(1) [she] engaged in conduct protected by Title VII; (2) the employer took adverse action against [her]; and (3) a causal link exists between [her] protected conduct and the employer's adverse action." Weiss v. Parker Hannifan Corp., 747 F. Supp. 1118, 1128 (D.N.J. 1990); see also Robinson v. SEPTA, 982 F.2d 892, 895 n.1 (3d Cir. 1993); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990). Charlton clearly meets the first element because the filing of a Title VII action is protected conduct.

On the second and third elements, a court first inquires whether the school board exercised any influence over the revocation proceeding and, if it did, whether Charlton can produce evidence sufficient to show the school board made a

17

retaliatory use of that influence to the detriment of Charlton's employment opportunities. Under New Jersey law, the state board has authority to determine the competency of state teachers and certify their qualifications. See N.J. Stat. Ann. § 18A:6-38 (West 1989). The state board also has the power to revoke certifications. Id. Under the New Jersey Administrative Code, the state board may revoke the teaching certificate of a holder who, inter alia, has demonstrated "conduct unbecoming a teacher." N.J. Admin. Code tit. 6, § 11-3.4 (1993). All decisions of the Commissioner of Education resulting in a teacher's loss of tenure are forwarded to the state board for review for possible revocation or suspension of the teaching certificate. Id. § 11-3.6(a)(1). Once the state board receives the record, the board reviews it to determine whether an order to show cause should issue. The state board has authority to issue an order to show cause where it has reason to believe that grounds exist for revocation or suspension. Id. If the teacher contests the order to show cause, the state board must refer the matter to the Office of Administrative Law for a hearing. Id.

After the tenure proceedings were concluded adversely to Charlton, the Paramus School Board had no official role in any proceedings for revocation of Charlton's teaching certification.[0] By regulation, the decision whether to proceed with suspension or

---

[0]A tenure revocation proceeding is an adversarial action in which the school board litigates against the teacher. The revocation of a teaching certificate, however, is not adversarial and is merely an administrative proceeding involving the individual teacher.

revocation rests within the discretion of the state board. Had the state regulatory agencies proceeded with a timely suspension or revocation proceeding, it would have appeared that the state board merely acted pursuant to its regulatory mandate. The facts as set forth in Charlton's opposition to summary judgment, however, raise another possible inference. The Commissioner of Education affirmed Charlton's loss of tenure on December 12, 1990. Pursuant to regulations, the commissioner should have promptly forwarded the results of the tenure proceeding to the state board for its review and consideration of revocation or suspension. If it thought that Charlton had committed acts worthy of the loss of a teaching certificate, it is not unreasonable to infer on the present record that the state board would have acted and issued an order to show cause at that time. No such action occurred. Not until two years later, after Charlton had reinstituted her Title VII action, did the state board finally conclude that an order to show cause should issue. Of course, that delay, standing alone, would be insufficient to imply the Paramus School Board had any hand in reviving the revocation procedure. Charlton has, however, proffered evidence in support of her opposition to summary judgment that would support an inference that the state board acted in response to the local school board's inquiry about the status of the revocation proceedings, an inquiry that came long after the local board had reason to do so.

The Paramus School Board filed tenure charges on July 20, 1989. The Commissioner of Education upheld the tenure

19

charges as warranting dismissal on December 12, 1990.  When the New Jersey Supreme Court finally denied certification, thereby affirming the result of her tenure proceeding, on September 9, 1992, there was no possibility that Charlton could reobtain her job in the school district.  Nevertheless, on November 11, 1992, only three weeks after Charlton had reinstituted her Title VII action, the school board inquired as to the status of the revocation proceedings.  This is at least curious because the local school board no longer had any apparent reason for its interest in the outcome of this proceeding and, under New Jersey law, had no responsibility or interest in expediting, reviving or insuring the state board's pursuit of revocation.  Charlton was no longer an employee of the Paramus School District and had no prospects of further employment with it.  Construing the facts in a light most favorable to Charlton as we must, we believe a reasonable jury could conclude that the school board's belated inquiry, if left unexplained, supports an inference that the local school board sought to bring the revocation proceedings back to life and to monitor them in retaliation for Charlton's Title VII suit.  While the school board had no official responsibility for the revocation proceeding, this record permits an inference that it had a retaliatory motive for its newly revived interest in Charlton's case.

        The local school board's lack of direct authority or responsibility for the certification decision does not seem to us to eliminate a potential Title VII violation.  If an employer who does not actually make the subsequent employment decisions is

liable under Title VII if he "blacklists" a former employee for that employee's exercise of Title VII rights, a school board can also be liable if it has a retaliatory motive for an attempt to jump start or influence state administrative proceedings to revoke Charlton's professional certification. The absence of local regulatory authority over the revocation decision is not dispositive.

Charlton's burden upon remand, however, is heavy. She must not only demonstrate but for the intervention of the school board that the revocation proceeding would not have gone forward but also that the school board intervened in retaliation for her Title VII suit.[0]

IV.

Accordingly, we conclude that Charlton is not barred from pursuing a Title VII claim merely because she was not an employee at the time her former employer potentially acted to interfere with her prospects of future employment. Evidence supports Charlton's claim that the school board sought to interfere with Charlton's future employment opportunities and if this interference was prompted by Charlton's Title VII action, she has stated an actionable claim.

We will affirm the district court's order granting summary judgment on the discrimination and hostile work

---

[0]Evidence concerning her former attorney's statement could help her case if it were presented in admissible form. As it stands, it is hearsay.

21

environment claims.  We will, however, reverse and remand to the district court for it to consider the sole issue of Charlton's claim that the Paramus School Board sought to have her teaching certificate revoked in retaliation for her filing of a Title VII suit.