## IV.

## CONCLUSION

For the reasons set forth herein, we will deny the petition for review.

**Kathy D. KIDD, Appellant**

**v.**

Commonwealth of PENNSYLVANIA; Pennsylvania State Police; Bureau Liquor Control Enforcement; William H. Hairston; Walter N. Peterson; Jan F. Llewellyn; Thomas J. Sweetz; Michael R. Moyer; Nathan R. Savage; Robert Murry; * Keith Knock; 3 Jane/ John Doe., All but Commonwealth of Pennsylvania, PSP/BLC Defendants sued individually and in official capacity. All Defendants held jointly and severely liable

No. 01–3447.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1 June 11, 2002.

Filed June 19, 2002.

* Amended per the Clerk order dated 12/07/01

Before SLOVITER, ROTH, and McKEE, Circuit Judges.

## OPINION OF THE COURT

McKEE, Circuit Judge.

Kathy Kidd brought various federal and state civil rights and employment discrimination claims against the defendants in connection with her employment as a Liquor Enforcement Officer at the Pennsylvania State Police Bureau of Liquor Enforcement ("the Bureau"). The district court disposed of a number of issues in pretrial rulings leaving only the Title VII sex harassment claim against the Bureau to proceed to trial. A jury subsequently found the Bureau not guilty on that claim. Kidd's motion for a new trial was denied, and this appeal followed. For the reasons that follow, we will affirm.

### I.

Inasmuch as we write only for the parties, we need not set forth the factual background of this dispute except insofar as may be helpful to our brief discussion. We exercise plenary review over a district court's order granting summary judgment, see *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir.2001), as well as its order granting a motion to dismiss, see *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997). A district court's rulings regarding the admission of evidence are reviewed for an abuse of discretion. See *Glass v. Philadelphia Electric Co.*, 34 F.3d 188, 191 (3d Cir.1994). The order denying a motion for a new trial is also reviewed for an abuse of discretion.

See *Pryer v. Slavic*, 251 F.3d 448, 453 (3d Cir.2001).

### II.

Kidd appeals the district court's grant of summary judgment, and the district court's pre-trial evidentiary rulings. She also challenges the jury instructions and interrogatories. We will address each issue in turn.

### A. The Dispositive Motions

The district court granted summary judgment to defendant Moyer on Kidd's civil rights claim under 42 U.S.C.1983. Kidd argues that Moyer, a co-worker, deprived her of her rights under the Fourth and Fourteenth Amendments by unlawfully "seizing" her when he allegedly pointed a loaded gun at her at work.

To prevail on a claim under Section 1983, a plaintiff must show that: 1) the conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of his or her constitutional rights. See 42 U.S.C.1983; *Anderson v. Davila*, 125 F.3d 148, 159 (3d Cir.1997).

■ Moyer denies that the gun incident took place. The State Police conducted an extensive investigation into the incident. They concluded that the six witnesses who were in the squad room when Moyer allegedly pointed his gun at Kidd did not see the alleged incident and could not corroborate Kidd's story. The State Police concluded that "[t]here exist[s] insufficient evidence to sustain the allegation that Officer Moyer pointed a pistol at Officer Kidd." App. 2386. As Kidd has offered no additional evidence beyond her unsupported allegations to corroborate her version of events, there was no genuine issue of material fact that Moyer "seized" Kidd. Therefore, the district court properly granted summary judgment in favor of

Moyer on the Section 1983 claim.[1]

Kidd also argues that defendants are liable for conspiracy to deprive her of equal protection of the laws under 42 U.S.C.1985. That section provides a cause of action to a party where two or more people have conspired to deprive the plaintiff of the equal protection of the laws. See 42 U.S.C.1985(3) (2002). As Kidd can not show that Moyer deprived her of any constitutional rights, Kidd's Section 1985 conspiracy claim must necessarily fail also.

Next, Kidd argues that the district court erred in granting summary judgment in favor of the defendants on her Title VII retaliation claim. The district court found that Kidd had not made out a prima facie case for retaliation in that she had not demonstrated that the Bureau took any "adverse employment decision" against her.[2]

■ Under Title VII, an employer may not retaliate against an employee for opposing a practice that is unlawful under Title VII. See 42 U.S.C. § 2000e–3(a) (2002). However, in order to prevail on this claim, a plaintiff must first establish a prima facie case, which consists of demonstrating: 1) protected employee activity; 2) an adverse employment decision; and 3) a causal connection between the protected activity and the adverse employment decision. See *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir.1994). Moreover, under *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997), the adverse employment decision must rise to the level of "alter[ing] the employee's compensation, terms, conditions, or privileges of employment, deprive[ ] him or her

of employment opportunities, or adversely affect[ ] his [or her] status as an employee." *Robinson*, 120 F.3d at 1300 (internal quotation marks omitted). Derogatory comments and unsubstantiated oral reprimands without more are not enough. See *id.* Here, Kidd alleges that Moyer's retaliation for her filing a sexual harassment complaint was calling her a "Judas," a "rat," and pointing a loaded gun at her. As noted above, the alleged retaliation must constitute an "adverse employment decision" within the meaning of Title VII. Under Robinson, however, Moyer's name-calling, even if true, does not suffice. Further, as discussed earlier, we find that there is no genuine issue of material fact that Moyer pointed a loaded gun at Kidd. Kidd's claim of retaliation rests only upon the alleged name calling. Therefore, the district court properly granted summary judgment in favor of the defendants on the Title VII retaliation claim.

Next, Kidd argues that the district court erred in granting summary judgment in favor of the defendants on her federal and state wiretapping claims. Both Pennsylvania and federal law provide a cause of action where a person's wire, electronic, or oral communication has been intercepted in violation of the applicable statute. See 18 U.S.C. 2520 (2002) (federal wiretapping statute); see also 18 Pa. Cons.Stat. 5725(a) (2002) (state wiretapping statute). Under both federal and state law, the plaintiff must first she that: 1) her oral communications were intercepted; 2) she had an expectation of privacy in the communications; and 3) her expectation of privacy

---

1. Even assuming the gun incident is true, it is not clear that the act of one officer pointing a gun briefly at another under these circumstances would constitute a "seizure" within the meaning of the Fourth Amendment.

   Moreover, inasmuch as we dispose of the Section 1983 claim on the grounds that there is no evidence Kidd was "seized," we need not address the question whether Moyer was acting "under the color of law."

2. Kidd also argues in her brief that Moyer retaliated against her for exercising her First Amendment rights. However, to the extent that Kidd's Title VII retaliation argument rests on First Amendment analysis, it is waived, as she didi not raise this First Amendment claim in the district court.

was justified. See *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (analyzing federal statute); *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519, 522 (1998) (analyzing state statute).

■ Kidd alleges that she had a meeting with Murray and Savage where all three agreed to tape record their conversation. Kidd alleges that after a time, Murray asked that all tape recorders be turned off, but that he secretly kept his on. Kidd further alleges that Murray later destroyed the evidence. However, once again, Kidd provides no support beyond mere allegations that Murray's tape player continued to record and that he destroyed the recording. Further, she testified at her deposition that she could not recall if she even said anything in the brief time Murray's tape player was supposedly recording in violation of the agreement not to record. A necessary element to the crime of wiretapping is that an oral communication must have been intercepted, and as Kidd does not know if she was speaking while the recorder was on, the district court properly granted summary judgment in favor of defendants on the wiretapping claims.[3]

### B. Evidentiary Issues

Kidd argues that the district court improperly prevented her from introducing evidence at trial during rebuttal regarding events predating January 1996. Kidd contends that the district court's November 29, 2000 Order stated that it would not allow her to present this evidence in her case in chief, but that Kidd could present this evidence on rebuttal if the defendants opened the door. Kidd contends that, contrary to the order, the district court did not allow her to introduce necessary pre–1996 rebuttal evidence.

The record indicates that in a sidebar during re-direct, the judge told counsel that he would allow Kidd to provide a brief explanation of her forced leave of absence in 1992, as defense counsel had touched on it during examination, but that Kidd would not be allowed to give full details since it was not relevant to Kidd's remaining post–1996 claims. App. 2630–2640. After the sidebar, Kidd was given the opportunity to testify that she felt that her forced leave of absence was unjustified and that her allegations were not afforded a proper and fair investigation. App. 2640. Moreover, Kidd was allowed to testify that her firearm was eventually returned to her and she was returned to full duty. App. 2640–41. Therefore, Kidd's argument that she was not allowed to present any rebuttal evidence regarding the forced leave of absence is plainly contradicted by the record.

Next, Kidd argues that the district court erred in granting defendants' motion in limine to exclude the admission of testimony of four State Police employees. Kidd sought to introduce testimony that these four witnesses had each brought complaints of sexual harassment against the State Police, and that their supervisors forced them to undergo psychological examinations in an effort to discredit them rather than investigating the allegations. Kidd wanted to introduce this evidence to establish a system-wide practice of ignoring sexual harassment complaints. The district court ruled that the testimony was irrelevant to Kidd's case, and thus inadmissible.

Two of the witnesses, Sharon Williams and Edwina Clarkson, were Bureau officers, but did not work at the Allentown office where Kidd worked. Two of the other witnesses, Robert Ward and Crystal Rogers, worked for the State Police, but

---

**3.** We also summarily dismiss Kidd's Intentional Infliction of Emotional Distress claim. The Commonwealth, it subdivisions, and its employees acting within the scope of employment enjoy Eleventh Amendment immunity in federal court. *See* 42 Pa.Cons. Stat. § 8521 (1998). The Pennsylvania legislature has not

chosen to waive this immunity for intentional torts. *See LaFrankie v. Miklich*, 618 A2d 1145, 1149 (Pa.Cmmwlth.1992). Therefore, Kidd's Intentional Infliction of Emotional Distress claim is barred under the doctrine of sovereign immunity.

not for the Bureau, and not in Allentown. Therefore, none of the witnesses could testify from firsthand knowledge about the relevant procedures in Allentown, where Kidd worked.

■ Kidd was ordered to undergo a psychological examination, but that occurred in April 1992. This was well before she made any complaints regarding harassment, and there is therefore no nexus between those events on this record. Moreover, she was not ordered to undergo a new exam after she started making complaints in 1996. Any testimony the four witnesses could provide regarding an order they received to take a psychological exam after complaining of sexual harassment was therefore clearly not relevant to Kidd's situation. Accordingly, we find that the district court did not abuse it discretion in excluding the testimony of the four witnesses.[4]

Next, Kidd argues that the district court erred in excluding from evidence several pieces of anonymous mail that were sent to her house. This consisted of sexually explicit pictures as well as Corporal Hairston's office notes.

Kidd argues that her inability to directly link the mailings to anyone at the Bureau is due to sub-par investigative work on the part of the police investigator. Kidd argues that if the investigator had done a better job investigating the source of the mailings would have been discovered as coming from within the Bureau. However, this is pure conjecture that doesn't merit further comment.

Moreover, the district court properly concluded that the notes were not relevant. Therefore, there was not an abuse of discretion.[5]

### C. The Jury Instructions and Interrogatories

■ Kidd argues that the district court erroneously refused to allow her to submit a jury charge on supervisor liability. She alleges that Corporal Hairston, her supervisor, engaged in sexually harassing behavior by calling her a "bitch" on one occasion in the midst of an argument with her. The district court correctly ruled as a matter of law that the one-time use of this epithet under these circumstances was not sexual harassment. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Kidd also argues that the district court erroneously rejected her proposed jury instruction on supervisor liability. We review a jury charge "as a whole ... to determine if it fairly and adequately submitted the issues to the jury[.]" *Pryer*, 251 F.3d at 454, quoting *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 462 (3d Cir.1993). A jury charge is inadequate "only if the instruction [is] capable of confusing and thereby misleading the jury." *Link v. Mercedes–Benz of North Am., Inc.*, 788 F.2d 918, 922 (3d Cir.1986), quoting *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir.1984). Here, the district court instructed the jury that the plaintiff has the burden of proving that "management level employees actually knew, or should have known, of the sexually hostile work environment, and failed to take prompt and appropriate remedial action to stop the sexual harassment." App. 079. The adequacy of Kidd's proposed instruction is not the threshold question. The district court was well within its discretion in rejecting her proposed jury charge, and using its own language instead as it is an accurate statement of the law.

---

**4.** Kidd also argues that the witnesses' testimony was relevant to establish malice or reckless indifference for punitive damages. There is no merit to this argument as 42 U.S.C. § 1981a(b)(1) precludes recovery of punitive damages in suits against a governmental agency in Title VII cases. *See* 42 IU.S.C. § 1981a(b)(1). Moreover, even if it was allowed against the individual defendants in their capacities, it would still have to be relevant to her allegation of retaliation or harassment. It clearly wasn't.

**5.** Even though the notes were properly excluded on relevancy grounds, the district court allowed Kidd the opportunity to use the notes in rebuttal if the defendants "opened the door." App. 064.

Kidd also argues that the district court's jury instructions were biased towards the defendants. This is based on the fact that the district court largely used the Bureau's proposed instructions. Kidd also contends that the jury became confused because the court incorrectly explained the burden of proof.

As noted above, we find that the charge submitted to the jury adequately stated the law regarding supervisor liability, and therefore, regardless of whether the charge was crafted by the defendants, there is no merit to the argument that it was biased towards the defendants. It is true that on two occasions the court started to instruct that, "beyond a reasonable doubt" was the standard for burden of proof. However, both times the court immediately corrected itself and stated that the burden was a "preponderance of the evidence." App. 3349, 3369. The judge also correctly and adequately explained the preponderance of the evidence standard to the jury, and therefore no reasonable juror could have been confused or misled. App. 3346–48.

Lastly, Kidd argues that the jury interrogatories were not specific enough. However, a trial court has discretion in formulating jury interrogatories. See *Armstrong v. Dwyer*, 155 F.3d 211, 216 (3d Cir.1998). So long as the questions are adequate for a "jury to determine the factual issues essential to the judgment[,]" a court is "not obliged to distill these issues with any greater clarity." *Id.* at 216.

In conclusory fashion, Kidd states that these interrogatories were not sufficiently detailed, but provides no explanation or rationale for her argument. We find that the interrogatories were adequate, and that the district court did not err in denying Kidd's motion for a new trial.

Accordingly, for all the reasons set forth herein, we will affirm the district court's Orders dated May 20, 1999, November 29, 2000, and August 20, 2001, as well as the judgment entered July 11, 2001.