NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1223

_____

DAVID L. ARCHER, on his own behalf and on behalf of his child D.A.;
DANIKA LA'DAWN AYERS, on her own behalf and on her child J.M.;
STEPHANIE PARKER, on her own behalf and on behalf of her children M.M. and S.P.;
SEAN PASSNO, on his own behalf; RACHEL RIDDLE, on her own behalf and on
behalf of her child J.M.; MICHAEL SMITH, on his own behalf; KEITH THOMAS, and;
YOLANDA THOMAS, on their own behalves and on behalf of their children R.R., M.T.
D.D., and M.T.; BETTY EDWARDS; VIRGEN GARAIS; NOVERTIE VARGAS;
KATHY D. HARRIS; JOSE MONTALVO; LA-TWANYA RICHARDSON;
KEVIN BYERS; LENAIDA JACKMAN; D. MARCUS DURHAM;
ANDREA HAWKINS; ANTHONY CROSBY; LAKEISHA SMITH;
SANDRA COLEMAN; DORTHEA ALAM; SHANNON GARCIA;
CORRITA DANIELS; JOYCE ACEVEDO; CHRISTINA GREAVES;
HUMBERTO BARREA; CARLOS SERRANO; CATHERINE BLOUSE-GONZALEZ;
BEVERLY AWKWARD; INGRID PEDROZA; SEAN HOLMES;
LONISHA MORGAN; ROSA FIGUEROA; KIMBERLY R. SHAW;
MARISOL RODRIGUEZ-MATOS; NIURKA CANALES;
GUADALUPE ROSETE; JERMARI MURPHY; RACHEL RIVERA;
TRINETTE WILLIAMS; MELINDA SMAW; AMAYRIS HERNANDEZ;
YAJAIRA ALICEA; HEATHER TRACEY; HERIBERTO GARCIA, JR.;
MCKENNA RODRIQUEZ; NILSA ARROYO; DENISE DURHAM;
DELAREASE SMITH; BEASLEY BROWN; JAMES WILSON;
SHAKIRA BROWN; TRACY TINSLEY; ONAYA BARTON; KAREEM ODEN,
Appellants

v.

YORK CITY SCHOOL DISTRICT; MARGIE ORR; JAMES MORGAN;
MICHAEL MILLER; JANE HINES; SANDIE WALKER;
MEMBERS OF THE BOARD OF DIRECTORS FOR THE SCHOOL
DISTRICT OF THE CITY OF YORK, in their official and individual capacities;
ERIC B. HOLMES; DEBORAH WORTHAM; MINDY WANTZ; VALERIE PERRY

_____

On Appeal from the United States District Court

for the Middle District of Pennsylvania
(D.C. No. 1-13-cv-02826)
District Judge:  Hon. John E. Jones, III

———————

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2017

Before:  CHAGARES, JORDAN, and NYGAARD, *Circuit Judges.*

(Opinion Filed:  September 27, 2017)

———————

OPINION*

———————

JORDAN, *Circuit Judge.*

This case arises from the decision of the Board of Directors ("the Board") for the

York City School District ("the District") to close the New Hope Academy Charter

School ("New Hope") by voting to not renew New Hope's charter.  New Hope itself

appealed the nonrenewal decision to the Pennsylvania State Charter School Appeal

Board, which upheld the nonrenewal.  New Hope then appealed to the Pennsylvania

Commonwealth Court, which also upheld the decision.  After that litigation ended, a

group of students from New Hope and parents acting on behalf of minor students ("the

Plaintiffs") filed this case in the United States District Court for the Middle District of

Pennsylvania, challenging the nonrenewal decision as a violation of the Fourteenth

Amendment's Equal Protection clause and claiming that five members of the Board, the

District itself, and multiple employees of the District (collectively "the Defendants")

———————

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

conspired to carry out that constitutional violation. The District Court granted summary judgment to the Defendants, and the Plaintiffs have appealed. Because there was a rational basis for the decision to not renew New Hope's charter, we will affirm.

I.    **FACTUAL BACKGROUND**[1]

New Hope was first granted a charter for the 2007-08 school year. It was operated by Isiah Anderson, who owned the management company with which New Hope contracted to oversee its operations. Anderson also owned the building New Hope rented and the Alternative Education for Disruptive Youth ("AEDY") program to which New Hope's students were sent. Despite his several interlocking interests in New Hope, Anderson never filed a Statement of Financial Interest disclosing them, as may have been called for by Pennsylvania's Public Official and Employee Ethics Act ("Ethics Act"), 65 Pa. Cons. Stat. Ann. § 1104. During New Hope's operation, the school's trustees approved the contracts with Anderson's companies, but there is no record of those contracts having been subject to an open and public review of proposals, which is required by the Ethics Act, 65 Pa. Cons. Stat. Ann. § 1103(f), nor is there a record of New Hope's trustees having engaged in any discussion or negotiation of the contracts. The failure of a director of a nonprofit to act in the nonprofit's best interest is a violation of Pennsylvania's Nonprofit Corporation Law. 15 Pa. Cons. Stat. Ann. § 5712(a).

---

[1] Because this is an appeal from a grant of summary judgment against the Plaintiffs, we recount the facts in the light most favorable to them and draw all reasonable inferences in their favor. *Doe v. Cty. of Centre*, 242 F.3d 437, 446 (3d Cir. 2001).

After multiple amendments and renewals, in December 2011, New Hope requested that its charter be renewed for five years. The Board sent a notice to New Hope indicating that it did not intend to renew New Hope's charter. It stated its preliminary reasons for nonrenewal and gave New Hope an opportunity to respond. The Board then held seven nights of hearings and reviewed a significant number of documents, including ones related to New Hope's test scores. New Hope asked to have its performance reviewed according to Pennsylvania's Value-Added Assessment System, an index that goes by the acronym "PVAAS" – just one of several acronym-laden academic measures that surfaces in this case. PVAAS was not included as part of Pennsylvania's evaluation of teaching professionals until the 2013-2014 school year, after New Hope's charter was not renewed. The Board therefore relied on the Pennsylvania System of School Assessment ("PSSA") scores, which "is a standards-based, criterion-referenced assessment" that measures "student and school performance related to the attainment of proficiency of the academic standards." (App. at 561.) At the time, PSSA was also an essential part of calculating a school's Annual Yearly Progress (AYP), which was a measurement required by the federal No Child Left Behind Act. So the Board looked at New Hope's PSSA scores and its failure to achieve AYP in deciding whether to renew its charter, but did not look at the PVAAS scores. According to Board members, the decision not to rely on PVAAS was because that was not an accepted metric at the time and because it is not a measure of student achievement. In addition, New Hope's charter specified that academic progress would be evaluated using PSSA proficiency.

4

New Hope's percentage of students scoring proficient or better on the PSSA during the five years of its charter was, for reading, 36.6% in 2008, 32.6% in 2009, 32.5% in 2010, 34.7% in 2011, and 37% in 2012. For math, the percentages were 19.9% in 2008, 22.4% in 2009, 31.5% in 2010, 32.3% in 2011, and 35% in 2012. In 2011, the last year before New Hope's review, the most comparable charter school in the same district, Helen Thackston Charter School ("Thackston"), achieved 41.9% proficiency in reading and 55% proficiency in math. In addition, unlike New Hope, Thackston was able to achieve AYP during at least one year. In line with that disparity in test scores, New Hope received a "Building Level Academic Score" of only 46.8 out of 100, while Thackston was able to achieve 57.5 out of 100. The School District's non-charter schools also suffered from serious deficiencies, but they still outperformed New Hope every year that New Hope was in operation.

Relying on PSSA and the annual AYP calculation, and finding the relationship between New Hope and Isiah Anderson to involve ethical violations, the Board voted not to renew New Hope's charter. After that vote, the District issued an exhaustive 78-page adjudication concluding that New Hope's charter should not be renewed. New Hope appealed that decision to the Pennsylvania State Charter School Appeal Board ("the Appeal Board"), which denied the appeal. The Appeal Board issued a 51-page opinion concluding that New Hope materially violated the terms of its written charter and, in some cases, the law when it failed to meet academic standards, to follow its admission and enrollment policy, to comply with laws regarding placement in AEDY programs, to provide timely truancy and student attendance information, and to comply with ethics

5

laws. After the Appeal Board denied the appeal, New Hope filed a petition for review in the Pennsylvania Commonwealth Court. A panel of that court concluded that "New Hope's charter was properly denied for failure to meet state academic performance requirements" and therefore the Appeal Board's decision was correct. (App. at 443.) The court also agreed with the Appeal Board that New Hope violated Pennsylvania's Ethics Act and Pennsylvania's Nonprofit Corporation Law, but it did not address New Hope's enrollment policy, its placement of students in AEDY programs, or its failure to provide timely reports of student attendance information.

In the 2013-14 school year, Thackston sought renewal of its charter for the following school year. In accordance with its charter and the newly created compilation of metrics called the "School Performance Profile," PVAAS was used as one method for evaluating Thackston's academic performance. Although Thackston likewise suffered from some academic shortcomings, the District permitted Thackston to correct identified deficiencies before deciding whether to renew its charter. And, even considering those deficiencies, Thackston still outperformed the district high school. After meeting with Thackston's representatives, the District decided not to initiate nonrenewal proceedings against Thackston. As a result, Thackston was never subjected to the rigorous nonrenewal review process New Hope underwent. Thackston's charter was ultimately renewed with conditions.

## II. PROCEDURAL BACKGROUND

The Plaintiffs brought this suit claiming that the more searching scrutiny New Hope received from the District violated the Equal Protection clause, and that members

6

of the Board and the District's administration conspired with the District to carry out that violation.[2] The Defendants moved for summary judgment and, after an exhaustive analysis, the District Court concluded that Thackston and New Hope were not similarly situated because "Thackston students … vastly outperform[ed] New Hope students" academically, (App. at 28), and because of "the highly concentrated governance structure at New Hope under Isiah Anderson[.]" (App. at 29.) The Court further concluded that, even if the schools were similarly situated, those same distinctions provided a rational basis for the District to treat them differently. As a result, the District Court held that New Hope's equal protection claim could not be sustained as a matter of law and therefore summary judgment against the Plaintiffs was in order on that claim. Without an underlying equal protection violation, New Hope likewise could not sustain its claim of a conspiracy, and the Court entered summary judgment on that claim as well.

In its opinion, the District Court also addressed the Plaintiffs' assertion that there were inconsistencies in the Defendants' evidence and the further claim that the Defendants had spoilated evidence. The Court carefully reviewed each discrepancy highlighted by the Plaintiffs and decided that the discrepancies, "even if taken in the light most favorable to Plaintiffs, are simply not enough to overcome Defendants' rational basis for the nonrenewal of New Hope's charter[.]" (App. at 31.) In addition, the Court rejected the Plaintiffs' argument that the discrepancies amounted to deliberate falsehoods. The claim of spoliation was based on the District's deletion of an email account of a

---

[2] The Plaintiffs initially brought several other claims, but they were dismissed at the pleading stage and the Plaintiffs do not challenge those rulings on appeal.

former assistant superintendent who left the District more than a year before litigation began. The District Court concluded that there were insufficient facts to infer that there had been intentional destruction of evidence, as the deletion was in accordance with the District's policy and occurred well before the threat of litigation existed. There was not a sufficient factual basis for concluding that a duty to preserve arose prior to the District's deletion of the account. Therefore, the discrepancies in the factual record and the deletion of the email account did not change the outcome of the summary judgment decision.

This appeal followed.

## III. DISCUSSION[3]

The Plaintiffs challenge every step of the District Court's decision. First, they take issue with the District Court's conclusion that they did not make out an equal protection claim. Second, they argue that they did in fact make out a conspiracy claim. Third, they maintain that the District Court erred in concluding that the Defendants had not presented false testimony. Fourth, they dispute the District Court's conclusion that the Defendants were not responsible for the spoliation of evidence. Finally, they argue

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Defendants did not challenge the Plaintiffs' prudential standing. Although that standing is questionable, because the Defendants did not raise the issue, and because it is clear that the Plaintiffs nonetheless cannot prevail on the merits, we need not address the issue here. *See Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) ("We find it unnecessary to decide the so-called standing issue which would, at best, only involve prudential standing … because we are satisfied that plaintiffs' allegations are, nevertheless, insufficient[.]").

that the District Court erred by permitting the Defendants to present new facts and evidence via their summary judgment reply brief.  We address each of those arguments in turn.[4]

## A.    Equal Protection Claim

First, the Plaintiffs brought a "class of one" equal protection claim, which requires proving that New Hope was "intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  According to the Plaintiffs, New Hope and Thackston were similarly situated charter schools that the Defendants treated differently, even though there was no rational basis for doing so.[5]  The Defendants point to the disparity in test scores and the differences in governance structure to demonstrate that the schools were not similarly situated and argue that, even if they were, there was a

---

[4] "Our review of a district court's grant or denial of summary judgment is plenary." *Zaloga v. Borough of Moosic*, 841 F.3d 170, 174 n.3 (3d Cir. 2016).  We apply the same standard that the district court applied, *Johnson v. City of Philadelphia*, 837 F.3d 343, 349 n.30 (3d Cir. 2016), and will affirm only if "there is no genuine dispute as to any material fact" and the defendants are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[5] The Plaintiffs also argue that they were treated differently from Crispus Attucks, another charter school in the District.  But Crispus Attucks uses a different curriculum in order to serve a different type of student – those who had formerly dropped out of high school.  Therefore, New Hope and Crispus Attucks are not similarly situated and the school cannot be used as a comparator.  *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons [or entities] are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992))).

rational basis for treating them differently. There is no factual dispute that Thackston's test scores were better than the District's high school, and there is no dispute that New Hope's test scores were worse.[6] The significant disparity in academic scores is alone sufficient to provide a rational basis for treating the two schools differently.[7] Because that conclusion is dispositive, we need go no further. The Plaintiffs simply cannot

---

[6] Although the Plaintiffs spend a great deal of time arguing that the District should have considered New Hope's satisfactory PVAAS scores rather than its PSSA scores, the Plaintiffs make no allegation that its PVAAS scores exceeded those of the District's high school or Thackston. Instead, the Plaintiffs point to the Board's refusal to consider the PVAAS scores as an instance of the Board treating New Hope differently, since it considered PVAAS scores for Thackston. But, at the time of New Hope's review, PVAAS scores were not an accepted metric by the Pennsylvania Department of Education, and New Hope's charter specifically referred to PSSA scores as the academic measure to be used, while Thackston's specifically permitted the use of PVAAS scores.

[7] The Plaintiffs argue that test scores were not a proper basis on which to deny renewal of a charter. That was one basis for New Hope's appeal to the Pennsylvania Commonwealth Court, and that court decided the matter. *New Hope Acad. Charter Sch. v. Sch. Dist. of City of York*, 89 A.3d 731 (Pa. Commw. Ct. 2014). It held that "the Charter School Law permits a school district to deny renewal of a charter school's charter for failure to meet student academic performance standards." *Id.* at 736. It further held that the law permits a school district to make that decision based on a "[c]omparison of a charter school's academic performance to its local school district[.]" *Id.* at 740. It also said that using PSSA scores to do so was proper. *Id.* at 738. Therefore, to the extent the Plaintiffs argue that test scores were not a proper basis for the nonrenewal decision, we reject that argument and rely upon the Pennsylvania court's interpretation of Pennsylvania law.

Furthermore, even if test scores were not a permissible rational basis for nonrenewal, New Hope's violations of Pennsylvania's Ethics Act and Nonprofit Law certainly would be. *See id.* at 740-41 (finding substantial evidence that New Hope violated "the Ethics Act and the Nonprofit Law in it[s] contracts with its founder"). There is no factual dispute that New Hope failed to engage in an open bidding process when awarding contracts and instead awarded contracts to companies owned by Isiah Anderson, the man who was also New Hope's administrator.

10

support an equal protection claim under the requirements for proving discrimination based on a "class of one" theory.

## B. Conspiracy Claim

The Plaintiffs also challenge the District Court's grant of summary judgment on their claim that the Defendants conspired to interfere with civil rights, which they concede is dependent on their equal protection claim. Because we will affirm the grant of summary judgment on the Plaintiff's equal protection claim, we will also affirm the grant of summary judgment on the conspiracy claim. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275-76 (1993) (refusing to find a conspiracy where the actions taken did not implicate a protected right).

## C. Remaining Challenges

The Plaintiffs argue that there are inconsistencies and falsehoods in the Defendants' evidence that must be weighed by a jury and that, therefore, summary judgment was improper. But those inconsistencies and falsehoods would not change the outcome of the case and consequently are not "material facts" that preclude summary judgment. *See Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994) ("Facts that could alter the outcome are 'material facts[.]'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).

The Plaintiffs also claim that the Defendants destroyed evidence when the District deleted its former assistant superintendent's email account after she left the District. We review a District Court's decision on sanctions for spoliation of evidence for an abuse of discretion. *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "Spoliation

11

occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." *Id.* The District Court concluded that the third requirement was not satisfied because the email account was deleted pursuant to the District's general policies, not to suppress or withhold evidence. We cannot say that the Court abused its discretion in reaching that conclusion when there is no evidence to show that the District intentionally deleted the account of the assistant superintendent to destroy evidence, or that the email account would have contained any relevant evidence at all. Given that test scores are the linchpin of the Defendants' defense, and there is no argument that the assistant superintendent would have had any involvement in the statistical results produced by a state-wide, state-administered academic test, the spoliation argument is particularly weak, and, for the reasons given by the District Court, fails.

Finally, the Plaintiffs argue that the Defendants wrongly presented new evidence in their reply brief before the District Court, including an expert report. But the Plaintiffs did not move to strike the disputed portions of that reply brief, nor did they otherwise challenge it, so we will not review the argument on appeal. *See Gass v. V.I. Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument." (alteration omitted) (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 105-06 n.3 (3d Cir. 1999))).

IV. **CONCLUSION**

For the foregoing reasons, we will affirm.

12